UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TRADESMEN INTERNATIONAL, LLC, | ) | CASE NO. 5:15-cv-1368 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| TRADESMEN STAFFING, LLC, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is defendant's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, along with a supporting brief filed separately. (Doc. Nos. 30, 31[1] [collectively, "Mot."].) Plaintiff filed a brief in opposition (Doc. No. 32 ["Opp'n"]), and defendant filed a reply (Doc. No. 33 ["Reply"]). For the reasons discussed herein, the motion is granted.

## I. BACKGROUND

On July 9, 2015, plaintiff Tradesmen International, LLC ("Tradesmen" or "plaintiff") filed its complaint against defendant Tradesmen Staffing, LLC ("Staffing" or "defendant") alleging trademark infringement, false designation of origin, unfair competition, and unjust enrichment. (Doc. No. 1, Complaint ["Compl."].) Staffing is an Idaho limited liability company with its principal place of business in Twin Falls, Idaho, where its registered agent for service of process is also located. (*Id.* ¶¶ 3, 4.)

Tradesmen's complaint alleges that Tradesmen "is engaged in the business of providing labor staffing strategies including [temporary] employment placement services for skilled workers

---

[1] Doc. No. 31 replaces the original brief in support that was filed as Doc. No. 30-1.

[in interstate commerce]." (*Id.* ¶¶ 7, 9.) Tradesmen owns a certain registered trademark and design that it has used continuously in connection with this business. (*Id.* ¶¶ 8, 9, 10.)

Tradesmen alleges that Staffing is using an infringing mark ("a colorable imitation" of plaintiff's mark) in connection with a similar temporary employment placement service that it operates online via a website. (*Id.* ¶¶ 15, 16, 18.) On or about January 20, 2015, Tradesmen gave written notice to Staffing that its use of the mark TRADESMEN STAFFING creates a significant likelihood of confusion, and demanded that Staffing desist in its use of that mark. (*Id.* ¶ 19; Ex. 4.) Staffing has allegedly continued to use the mark. (*Id.* ¶ 20.)

Initially, after Staffing failed to move or otherwise plead in response to the complaint, the clerk noted the default on November 5, 2015. (Doc. No. 12.) Plaintiff moved for default judgment (Doc. No. 14), but before the Court could rule on that motion, defendant made a special appearance (*see* Doc. No. 16), and moved to set aside the default (Doc. No. 17). Thereafter, the parties indicated that they were attempting a "business resolution" and sought an extension of time for briefing on the pending motions; this motion was granted, with directions for proceeding should there be no resolution. (*See* Doc. Nos. 20, 21.)

The parties failed to resolve the case. On September 16, 2016, the Court granted defendant's motion to set aside the entry of default. The Court denied without prejudice defendant's request for dismissal for lack of personal jurisdiction. (*See* Doc. No. 28.) The parties then declined the Court's invitation to engage in mediation. The instant motion to dismiss under Rule 12(b)(2) followed and is now ripe for resolution.

## II. DISCUSSION

**A.      Legal Standard - Generally**

"The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (citing *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887-88 (6th Cir. 2002)). "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citation omitted); *see also Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168-69 (6th Cir. 1988) (requiring that plaintiff "demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss") (citations omitted)).

Where, as here, the Court addresses the Rule 12(b)(2) jurisdictional question without an evidentiary hearing, relying solely on affidavits, "the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *Theunissen*, 935 F.2d at 1458 (citations omitted).[2] "[T]he pleadings and affidavits . . . are received in a light most favorable to the plaintiff." *Id.* at 1459 (citations omitted). "In sharp contrast to summary judgment procedure, however, the court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal." *Id.* (citing *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (further citation omitted)). This rule was adopted in *Serras* "in order to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts[.]" *Id.* "Dismissal [is] only proper if all of the specific facts

---

[2] On a motion to dismiss pursuant to Rule 12(b)(2), the Court has three procedural alternatives; it may (1) decide the motion on affidavits alone; (2) permit discovery in aid of deciding the motion; or (3) conduct an evidentiary hearing to resolve any apparent factual questions. The method selected affects the plaintiff's burden of proof. *Id.*

[plaintiff] alleged collectively failed to state a *prima facie* case for jurisdiction under the appropriate standards." *Id.*

The Court, in its discretion, chooses to decide this motion on the basis of the factual allegations in the complaint, taken as true, and upon the affidavits submitted by the parties,[3] construed in plaintiff's favor.

**B.     Personal Jurisdiction**

To meet its burden of establishing personal jurisdiction, plaintiff must show both (1) that the defendant is amenable to service of process under Ohio's long-arm statute; and (2) that the exercise of personal jurisdiction would not deny the defendant due process. *See Theunissen*, 935 F.3d at 1459 (diversity); *Bird*, 289 F.3d at 871 (federal question). Courts often begin with the due process considerations, "recognizing that a defect of this type would foreclose the exercise of personal jurisdiction even where a properly construed provision of the long-arm statute would otherwise permit it." *Theunissen*, 935 F.2d at 1459.

In this case, because the due process considerations are dispositive of the motion to dismiss, the Court need not address the arguments relating to the long-arm statute.[4]

---

[3] Defendant's motion is supported by two declarations of Joe Visser, President of Tradesmen Staffing, one executed on December 10, 2015 (Doc. No. 18 ["Visser Decl. 1"]) and another executed on October 12, 2016 (Doc. No. 30-3 ["Visser Decl. 2"]). The record of the case also contains the declaration of Staffing's intellectual property attorney, Robert Shaver, which the Court has considered. (Doc. No. 19 ["Shaver Decl."].) Declarations in support of plaintiff's position include those of Tama L. Drenski, one of plaintiff's counsel of record (Doc. No. 23-1 ["Drenski Decl."]); Edward Rojeck, plaintiff's corporate marketing director (Doc. No. 23-2 ["Rojeck Decl."]); and Patrick Flynn, plaintiff's general counsel (Doc. No. 23-3 ["Flynn Decl."]).

[4] "[I]n evaluating whether personal jurisdiction is proper under Ohio's long-arm statute, [the Sixth Circuit has] consistently focused on whether there are sufficient minimum contacts between the nonresident defendant and the forum state so as not to offend 'traditional notions of fair play and substantial justice.'" *Bird*, 289 F.3d at 871-72 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (additional citation omitted)). Staffing asserts that plaintiff cannot meet its burden of proving that Staffing is amenable to service under Ohio's long-arm statute because Tradesmen cannot show that Staffing is engaged in one of the actions enumerated in Ohio Rev. Code § 2307.382, and that Tradesmen's claim arose from that action. Staffing argues that the "bare bones allegation" that "Defendant Tradesmen Staffing has committed acts of infringement here, and is thus subject to personal jurisdiction in this judicial district[,]" is utterly insufficient to meet its burden under the long-arm statute. (Mot. at 323, quoting Doc. No. 1, Complaint ["Compl."] ¶ 6.) In opposition, Tradesmen argues that, under the long-

Personal jurisdiction exists in two forms: "general" or "specific." *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992). Plaintiff here claims that specific jurisdiction applies. Therefore, the Court need not discuss general jurisdiction, except to note that it would "require[] the defendant's contacts with the forum state [to be] of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Id.* (internal quotation marks and citation omitted).

The Sixth Circuit has established a three-part test for determining whether specific jurisdiction exists:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir. 1968) (footnote omitted). "An inference arises that the third factor is satisfied if the first two requirements are met." *Bird*, 289 F.3d at 875 (quotation omitted). The Court should also consider "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *Am. Greeting Corp.*, 839 F.2d at 1169-70 (citation omitted).

---

arm statute, this Court may exercise personal jurisdiction over any person "who acts directly or by an agent, as to a cause of action arising from the person's: . . . [c]ausing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state[.]" Ohio Rev. Code. § 2307.382(A)(6) (cited by Opp'n at 339). Tradesmen argues that Staffing's willful infringement of Tradesmen's trademarks has caused tortious injury to Tradesmen in Ohio, and that Staffing had both constructive and actual notice of Tradesmen's trademarks, and should reasonably have expected that Tradesmen would be damaged by the infringement.

The purposeful availment requirement is "the *sine qua non* of *in personam* jurisdiction." *Mohasco*, 401 F.2d at 381-82. The requirement is satisfied when the defendant's contacts with the forum state "proximately result from actions by the defendant *himself* that create a substantial connection with the forum State, and when the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996) (emphasis in original) (internal citations and quotation marks omitted).

In its motion, defendant Staffing asserts that, even if it were amenable to service under the long-arm statute (which it denies), plaintiff fails to establish that Staffing has the requisite "minimum contacts" with the state to satisfy due process. Staffing argues that "'[r]andom,' 'fortuitous' or 'attenuated' contacts", or the activities of any party other than the defendant (including a plaintiff), do not establish specific jurisdiction. (Mot. at 326, quoting *Burger King Corp.*) Staffing rejects any claim that its website is sufficient to establish an Ohio presence, any ties to Ohio, or any purposeful availment of the privilege of acting in Ohio. Staffing notes that the Sixth Circuit case adopting the reasoning of the seminal case in the area of "purposeful availment" regarding websites, held that "[a] defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen Corp.*, 282 F.3d at 890 (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) (using a "sliding scale" of intended interaction to identify internet activity that constitutes purposeful availment)) (cited by Mot. at 328).

Staffing supports its argument with affidavits. It asserts that it is a small company owned by April Visser, who operates it out of the Idaho town of Twin Falls. Staffing's president is April's spouse, Joe Visser, who attests as follows:

- that all of the company's offices and business locations are within the state of Idaho. (Visser Decl. 1 ¶ 3.)

- that Staffing does not own real property in Ohio and does not have any personal assets in Ohio, and never has. (*Id.* ¶ 4.)

- that Staffing has no agents or employees in Ohio, and never has. (*Id.* ¶5.)

- that Staffing has no statutory agent for service of process in Ohio, and never has. (*Id.* ¶ 6.)

- that Staffing has no offices, subsidiaries of affiliated companies in Ohio, and never has. (*Id.* ¶ 7.)

- that Staffing holds no license to do business in Ohio, and has never conducted business in Ohio. (*Id.* ¶ 8.)

- that Staffing has never sent salesmen, representatives or other personnel to Ohio for the purpose of transacting business, that it does not transact business in Ohio, and that it does not contract to supply goods or services in Ohio. (*Id.* ¶¶ 9, 10.)

- that Staffing does not now have, and never has had, a telephone listing in Ohio. (*Id.* ¶ 11.)

- that Staffing does not regularly solicit business in Ohio, or engage in any persistent course of conduct, or derive substantial revenue from goods or services used or consumed in Ohio. (*Id.* ¶ 13.)

- that Staffing's owner, April Visser, is the registered agent for Staffing, whose address for service listed on the Idaho Secretary of State's website is a residence in Idaho where the Vissers no longer reside. (*Id.* ¶ 16.)

- that Staffing maintains a website at www.tradesmenstaffingllc.com. (Visser Decl. 2 ¶ 3.)

- that Staffing's website (screenshots of which are attached to Visser's second declaration) shows that Staffing is located only in Idaho, maintaining offices in four Idaho locations. (*Id.* ¶¶ 4, 5, 6 and Exs. A, B, C.)

- that job seekers looking for employment and/or employers looking for temporary employees can use the "Contact Us" portion of Staffing's webpage to input contact information. (*Id.* ¶ 7.)

- that, to the best of Visser's knowledge, Staffing has only provided employee staffing and payroll services to employers in Idaho, has never provided any services to employers in Ohio, has never placed any employee in Ohio, has never contacted any job seeker in Ohio, and has never contacted any employer in Ohio. (*Id.* ¶ 8.)

- that Staffing did not intend to harm anyone in Ohio by selecting its name, which merely reflects the fact that it provides staffing services in industries that utilize tradesmen. (*Id.* ¶ 10.)

Confronted with these facts, set forth in affidavits, Tradesmen may not rest on its pleadings, but must point to specific facts showing that the Court has personal jurisdiction over Staffing. *Theunissen*, 935 F.2d at 1458.

Tradesmen relies entirely upon the fact that Staffing operates a website that Tradesmen characterizes as "highly interactive." (Opp'n at 334.) It argues, in reliance upon screenshots of Staffing's website, that it "*allows* Ohio residents to file applications seeking employment over the Internet." (*Id.* at 335, emphasis added.) But Tradesmen offers no evidence than any Ohioan has ever done so. Tradesmen asserts that Staffing's website is a portal where "potential customers can submit requests for craftsmen to fill open positions[,]" that "[n]o restrictions are placed on where the potential customers' projects may be located[,]" and that "Staffing's website purports to be able to staff projects located anywhere." (*Id.*) But Tradesmen offers no evidence that Staffing has ever received any request for staffing from Ohio or that it has ever staffed any projects in Ohio.

Tradesmen asserts in conclusory fashion that Staffing "does business making full use of the Internet, as does [Tradesmen]." (Opp'n at 335.) Then, without any pinpoint citations, Tradesmen cites to the Rojeck Declaration generally to declare that "it is customary for those in the field of construction labor management and staffing support, such as the parties herein, to

service widespread geographic regions through an interactive website by receiving and responding to requests from craftsmen, providing educational training and materials, and providing labor productivity analyses." (*Id.*) But Rojeck's declaration offers no support to Tradesmen's position *with respect to Staffing*, since it does no more than state what, in Rojeck's view, is "standard trade practice," based on his experience with *Tradesmen*. Although the Court must take Tradesmen's factual allegations to be true, without more, it need not conclude that those facts, which may be true with respect to Tradesmen's business operations, are true with respect to Staffing's business operations.

And, Tradesmen argues, if these facts are not enough to satisfy the "purposeful availment" requirement of due process, Tradesmen is able to establish that Staffing, even after a cease-and-desist demand, "has exacerbated the likelihood of confusion by sending out an email to [Tradesmen's] customers." (Opp'n at 337, citing Flynn Decl. ¶ 3 ("It was reported to me that, on or about May 2015, a bulk email-mailing by Tradesmen Staffing announcing a revision of its payment policy resulted in Tradesmen International's customers emailing Tradesmen International to learn why its policy was changing.").) As properly pointed out by Staffing in its reply brief, this statement by Flynn is nothing more than inadmissible hearsay. (Reply at 345.)

The Court concludes that Tradesmen has failed to meet its burden of alleging admissible facts to support its claim that this Court may exercise personal jurisdiction over Staffing. The allegations of its complaint, read in conjunction with its affidavits and accepted as true, do not establish facts to support personal jurisdiction. Tradesmen's inordinate reliance on Staffing's allegedly interactive website is insufficient. "[P]urposeful availment requires 'something more' than the operation of a generally accessible, interactive commercial website reachable from the forum. That is, the plaintiff must sufficiently show that the defendant has taken some sort of

'deliberate' step in order to establish a 'substantial,' meaningful 'connection' with the forum." *Capital Confirmation, Inc. v. AuditConfirmations, LLC*, No. 3:09-0412, 2009 WL 2823613, at *9 (M.D. Tenn. Aug. 28, 2009); *see also Impulsaria, LLC v. United Distrib. Grp., LLC*, No. 1:11-CV-1220, 2012 WL 4341058, at *3 (W.D. Mich. Sept. 20, 2012) (accord) (citing cases). As in *Capital Confirmation*,

> [w]hile [plaintiff] has shown that [defendant] maintains a generally accessible commercial website, there is no evidence that [defendant] has taken any specific, deliberate step to establish a substantial connection with [Ohio]. There is no indication in the record that [defendant] has marketed itself in [Ohio], had any [Ohio] employees or agents, or that [defendant] has had any legitimate [Ohio] customers. While . . . in theory, [defendant] *could* have clients from [Ohio] . . . , there is no indication that anyone from [Ohio] actually has legitimately sought out [defendant's] services . . . . Therefore, there is no indication that [defendant] has had anything resembling a business relationship with anyone in [Ohio]. Indeed, the contacts [relied upon by plaintiff] are precisely the type of "random" or "attenuated" contacts that the Supreme Court has concluded are not sufficient to establish purposeful availment and personal jurisdiction.

*Capital Confirmation*, 2009 WL 2823613, at *9 (citing *Burger King*, 471 U.S. at 475).

### III. CONCLUSION

For the reasons set forth herein, defendant's motion to dismiss (Doc. No. 30) for lack of personal jurisdiction is granted and this case is dismissed without prejudice.

**IT IS SO ORDERED**.

Dated: June 16, 2017

                                             **HONORABLE SARA LIOI**
                                             **UNITED STATES DISTRICT JUDGE**